# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MILTON PFEIFFER,

                Plaintiff,

     v.

SOL PRICE,

                Defendant,

     - and -

PRICESMART, INC.,

                Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 04-296 SLR

## PLAINTIFF'S BRIEF IN SUPPORT OF
## PROPOSED SETTLEMENT AND APPLICATION FOR
## ATTORNEYS' FEES AND EXPENSES

ROSENTHAL, MONHAIT, GROSS
  & GODDESS, P.A.
Jeffrey S. Goddess (No. 630)
Suite 1401, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
  Attorneys for Plaintiff

OF COUNSEL:

ZIMMERMAN, LEVI & KORSINSKY, L.L.P
Jean-Marc Zimmerman
226 St. Paul Street
Westfield, NJ 07090
(908) 654-8000

October 24, 2005

**TABLE OF CONTENTS**

**PAGE**:

TABLE OF CITATIONS                                                      iii

NATURE AND STAGE OF THE PROCEEDINGS                                      1

SUMMARY OF ARGUMENT                                                      3

STATEMENT OF FACTS                                                       4

ARGUMENT                                                                 6

I.     Introduction                                                      6

II.    The Proposed Settlement Is Fair, Reasonable                       7
       And Adequate

       A.    Settlements Of Section 16(b) Actions Are                    7
             Favored By The Courts

       B.    The Settlement Satisfies Applicable Standards               7
             Of Review

             1.    The Complexity, Expense And Likely                    8
                   Duration Of The Litigation

             2.    The Stage Of The Proceeding                           9

             3.    The Risks Of Not Establishing Liability              10

             4.    Risk In Establishing Damages                         12

             5.    The Proposed Settlement As A Percentage              13
                   Of The Best Possible Recovery And The
                   Range Of Reasonableness In Light Of The
                   Litigation Risks

III.   The Applicable Legal Standards Support The Award Of              14
       Attorneys' Fees As Requested

|  | A. | Plaintiff's Counsel Are Entitled To Compensation Based Upon The Substantial Benefits They Have Achieved For The Company | 14 |
|  | B. | Fees Paid To Counsel Pursuant To Negotiated Agreements Should Be Approved By The Court | 15 |
| IV. |  | Notice To Shareholders Is Not Required | 16 |
| CONCLUSION |  |  | 17 |

## TABLE OF CITATIONS

**CASE**:                                                                                           **PAGE**:

*Armstrong v. Board of School Directors*,                                                                16
        471 F.Supp. 800 (E.D. Wis. 1979), *aff'd*,
        616 F.2d 305 (6th Cir. 1980)

*Bell Atlantic Corp. v. Bolger*,                                                                       7, 8
        2 F.3d 1304 (3d Cir. 1993)

*Blau v. Rayette-Faberge, Inc.*,                                                                         15
        389 F.2d 469 (2d Cir. 1968)

*Boeing v. Van Gemert*,                                                                                  14
        444 U.S. 472 (1980)

*Bryan v. Pittsburgh Plate Glass Co.*,                                                                    8
        494 F.2d 779 (3d Cir.), *cert denied*,
        419 U.S. 900 (1974)

*Bullock v. Adm'r Estate of Kircher*,                                                                     8
        84 F.R.D. 1 (D.N.J. 1979)

*City of Detroit v. Grinnell Corp.*,                                                                     14
        495 F.2d 448 (2d Cir. 1974)

*In re Computron Software, Inc. Sec. Litig.*,                                                             9
        6 F.Supp.2d 313 (D.N.J. 1998)

*In re General Public Utilities Sec. Litig.*,                                                             9
        [1983-84] Fed. Sec. L. Rep. (CCH) ¶99,566 (D.N.J. 1983)

*Girsh v. Jepson*,                                                                                       8
        521 F.2d 153 (3d Cir. 1975)

*In re Gould Sec. Litig.*,                                                                               15
        727 F.Supp. 1201 (N.D. Ill. 1989)

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,                                                       10
        142 F.R.D. 588 (S.D.N.Y. 1992)

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) — 14

*In re Jiffy Lube,*
    927 F.2d 155 (4th Cir. 1991) — 9

*Krinsky v. Helfand,*
    156 A.2d 90 (Del. 1959) — 1

*Kehoe v. Commissioner of Internal Revenue,*
    105 F.2d 552 (3d Cir. 1939) — 7

*Levy v. Clearwater Funds IV, Ltd.,*
    Civil Action No. 99-004-SLR (D.Del.) — 16

*Levy v. Wingate Capital Ltd.,*
    Civil Action No. 99-655-GMS (D.Del.) — 16

*Little Rock School District V. Pulaski County Special School Dist. No. 1,*
    726 F.Supp. 1544 (E.D. Ark. 1989) — 16

*Magma Power Co. v. Dow Chem. Co.,*
    136 F.3d 316 (2d Cir. 1998) — 12

*Mills v. Electric Auto-Lite Co.,*
    396 U.S. 375 (1970) — 14, 15

*Milstein v. Huck,*
    600 F.Supp. 254 (E.D.N.Y. 1984) — 8

*Milton Pfeiffer v. Sol Price,*
    D.Del. C.A. No. 04-296 SLR (Dec. 30, 2004) (D.I. 14) — 4

*Philadelphia Electric Co. v. Anaconda American Brass Co.,*
    47 F.R.D. 557 (E.D. Pa. 1969) — 15

*Portnoy v. XTAL Corp.,*
    638 F.Supp. 489 (N.D. Ill. 1986) — 14

*Protective Comm. For Independent Stockholders of TNT.*
    *Trainer Ferry, Inc v. Anderson,*
    390 U.S. 414 (1968) — 8

*Rosenberg v. Delta Airlines*,                                                16
      Civil Action No. 00-461-JJF (D.Del.)

*Schimmel v. Goldman*,                                                         7
      57 F.R.D. 481 (S.D.N.Y. 1973)

*Smolowe v. Delendo Corp.*,                                                    15
      136 F.2d 231 (2d Cir.), *cert. denied*,
      320 U.S. 751 (1943)

*Trustee v. Greenough*,                                                        15
      105 U.S. 527 (1882)

*Weiss v. Mercedes Benz of North Am., Inc.*,                                   9
      889 F.Supp. 1297 (D.N.J.), *aff'd*,
      66 F.3d 314 (3d Cir. 1995)

*Whiting v. Dow Chemical Co.*,                                                 11
      523 F.2d 680 (2d Cir. 1975)

*Whittaker v. Whittaker Corporation*,                                          11
      639 F.2d 516 (9th Cir. 1981)

*Williams v. First Nat'l Bank*,                                               7
      216 U.S. 582 (1910)


**STATUTES**:

8 <u>Del.C.</u> §141                                                           1

15 <u>U.S.C.</u> §78p(b)                                                       4


**OTHER AUTHORITIES**:

16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.09     *passim*

16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.10     15, 16

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff respectfully submits this brief in support of: (i) approval of the proposed settlement of this action; and (ii) an award of attorney's fees and reimbursement of expenses.

Plaintiff is pleased to present to the Court a proposed settlement of this Section 16 action (the "Action") whereby Defendant Sol Price ("Price") will purchase $1.5 million worth of common stock of PriceSmart, Inc. ("PriceSmart" or the "Company"), on whose behalf this Action was brought. This recovery represents an infusion of much-needed cash to the Company, attained without the Company's having to incur any debt and associated interest and other borrowing costs, also thereby avoiding any additional liability on its books that might adversely impact the price of its stock. This recovery, especially when considered in light of the possible risks of this litigation, is a truly excellent recovery fully meriting approval by the Court.

Plaintiff's counsel are also seeking approval of the fee arrangement which they negotiated with Company providing for the payment of $125,000 in attorney's fees and expenses incurred in the prosecution of the Action. This fee achieved in arms-length negotiations represents fair compensation for the efforts of counsel and the results achieved here, and should also be approved by the Court.

Importantly, the Company has fully endorsed both the recovery achieved and the award of attorney's fees. The business judgment of PriceSmart's independent directors in this case is entitled to the deference which Courts wisely give to the judgments of the persons charged by law with the management of Delaware corporations. 8 Del.C. §141. E.g., *Krinsky v. Helfand*, 156 A.2d 90, 94-95 (Del. 1959) where the Delaware Supreme Court stated:

1

> It was also quite proper for the Vice-Chancellor to give considerable weight to the fact that the amount of fee had been approved in advance of the settlement by an independent board of directors....

Id. At 95.

## SUMMARY OF ARGUMENT

I.   The Proposed Settlement Is Fair, Reasonable and Adequate And Should Be Approved.

II.  The Application For Attorney's Fees And Reimbursement Of Expenses Is Also Fair And Reasonable And Should Be Approved.

3

## STATEMENT OF FACTS

On December 12, 2003, after investigating the facts and circumstances surrounding certain transactions which defendant Price effected in PriceSmart securities[1], plaintiff, acting through his counsel, wrote a letter to PriceSmart's board of directors demanding that they bring an Action against Price for violating Section 16(b) of the Securities Exchange Act of 1934. On February 10, 2004, PriceSmart's board of directors refused plaintiff's demand.

Consequently, on May 17, 2004, plaintiff filed his Complaint initiating this Action alleging that Price, as trustee of the Charitable and Family Trusts and a beneficial owner of more than 10% of PriceSmart common stock, profited from the sale and subsequent purchase of PriceSmart stock within a six month period in violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78p(b).

Price moved to dismiss the Complaint on July 1, 2004. After full briefing, the Court denied Price's motion to dismiss on December 30, 2004. *Milton Pfeiffer v. Sol Price*, D.Del., Civ. No. 04-296-SLR, Robinson, J. (Dec. 30, 2004) ("the Opinion.") (D.I. 14.)

Following the Court's denial of Price's motion to dismiss, plaintiff served Price and PriceSmart with interrogatories and requests for the production of documents. In response, Price and PriceSmart provided plaintiff with details regarding the April and October transactions and the relevant trades Price had transacted in PriceSmart's securities. That

---

1 In late April 2003, defendant Price, as trustee of the Price Family Charitable Trust ("Charitable Trust") executed a purchase agreement ("April transaction") with the San Diego Revitalization Corporation ("SDRC") that effectuated a sale of 619,046 shares of PriceSmart common stock from the Charitable Trust to the SDRC at $16.12 per share. Then, in late October 2003, defendant Price, as trustee of the Sol and Helen Price Trust ("Family Trust") entered into a purchase agreement ("October transaction") with the Company to purchase 330,000 shares of PriceSmart common stock at $10.00 per share.

4

information revealed further details behind defendant Price's contention that the value received in the first of the two transactions – the April 2003 transaction – was not calculable simply on the basis of the stated $16.12 per share price. Only a minor portion of the consideration was in cash. The balance – greater than 90% – was in a non-recourse collateralized five year note. That, in turn, created complexity and significant doubt as to the appropriate damage calculations here.

The parties then began to engage in settlement discussions. Those discussions ultimately resulted in Price agreeing to purchase from the Company $1.5 Million worth of Company common stock at a 50¢ per share premium to settle the Section 16(b) claims asserted in the Action.[2] Of note for comparison purposes, the Company's historic cost of borrowed capital is at least 8%, so for an infusion of $1.5 million, if borrowed, debt service would cost the Company $120,000 per year and its balance sheet would carry further debt.

The basic terms were memorialized in a Memorandum of Understanding. Agreement was then reached with the Company with respect to the application for attorney's fees of plaintiff's counsel. The terms of these various agreements are embodied in the Stipulation And Agreement Of Settlement And Release, a copy of which is annexed hereto as Exhibit 1.

---

[2] To provide cushion, the settlement was agreed to at a price 50¢ above the closing price on August 18, 2005 – the day immediately prior to the day the parties reached agreement in principle – which proved to be a price of $8.90 per share. Hence, defendant Price would be purchasing 168,539 shares for $1.5 million.

5

## **ARGUMENT**

## **I. INTRODUCTION**

Considering the risks of continuing this litigation, including the risk of dismissal upon summary judgment, or a loss or low judgment following trial and appeal, the settlement of the Action is an excellent one and satisfies the fair, reasonable and adequate standard for approval of settlements.

Defendant Price's motion to dismiss laid out and foreshadowed his basic lines of defense to this action, later asserted in his Answer (D.I. 19) as affirmative defenses. Defendant Price asserted that: (1) the parties to the April transaction were irrevocably bound on April 24, 2003, despite that the transfer of stock was the following day; (2) the parties to the October transaction were not irrevocably bound until the transaction closed on October 23, 2003; (3) he was not a "beneficial owner" of the stock at issue in the April and October transactions; and (4) the two transactions did not result in a profit, primarily because the April purchase transaction involved a non-recourse note which must be discounted to reflect the risk associated with being able to collect on the note. The foregoing defenses create issues of fact which, in varying degrees, could be resolved in Price's favor upon summary judgment, trial or appeal.

In light of the foregoing risks, several of them significant hurdles to any recovery, the infusion into PriceSmart's coffers of $1.5 million resulting from Price's purchase of PriceSmart common stock at a slight premium and without PriceSmart having to incur any borrowing costs and debt service is, plaintiff submits, an excellent result which should be

6

approved by this Court. Similarly, the request for an award of $125,000 in attorney's fees and costs is reasonable and should be approved.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.   Settlements of Section 16(b) Actions Are Favored By the Courts

It is well-settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 585 (1910). *Accord Kehoe v. Commissioner of Internal Revenue,* 105 F.2d 552 (3d Cir. 1939). This is particularly true with Section 16(b) actions where the right to recover is often subject to serious questions of fact and of law. *Schimmel v. Goldman*, 57 F.R.D. 481 (S.D.N.Y. 1973). In cases such as this one, where the settlement agreement represents a good faith effort to balance the plaintiff's likelihood of success against the serious questions of law and fact which may stand in his way, a compromise should be approved unless it is unfair on its face. Id; 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.09[16].

### B.   The Settlement Satisfies Applicable Standards of Review

The standard for reviewing a proposed settlement of a Section 16(b) action is whether the settlement is "fair and reasonable". *Schimmel v. Goldman*, 57 F.R.D. 481 (S.D.N.Y. 1973). In *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993), the Third Circuit Court of Appeals set forth several factors to be applied in determining whether the settlement of a representative action is fair and reasonable. A Section 16(b) claim is neither a class action nor a shareholder derivative claim, as was the focus of the *Bell Atlantic Corp.* opinion, since the claim is a statutorily created right intended as an instrument of public policy for the

7

benefit of the general public. 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.09[1]. Nevertheless, the relevant factors outlined in *Bell Atlantic Corp.* can provide guidance in determining the fairness and reasonableness of a Section 16(b) settlement. *See generally*, 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.09[1].

The principal relevant factors in determining the adequacy of a settlement include the: (1) complexity, expense and likely duration of the litigation; (2) stage of the proceeding and the amount of discovery completed; (3) risks of establishing liberty; (4) risks of proving damages; (5) range of reasonableness in light of the maximum possible recovery; and (6) range of reasonableness in light of all the attendant risks of the litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (quoted in *Bell Atlantic Corp.*, 2 F.3d at 1311). The proposed settlement here amply satisfies each of these criteria.

## 1. The Complexity, Expense and Likely Duration of the Litigation

The first factor reflects "the probable costs, in both time and money, of continued litigation." *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 779, 801 (3d Cir.), *cert. denied*, 419 U.S. 900 (1974). Courts have consistently held that "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of the settlement . . ." *Milstein v. Huck*, 600 F.Supp. 254, 267 (E.D.N.Y. 1984). *See also Protective Comm. For Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Bullock v. Adm'r Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979). Here, a failure to settle the Action now would undoubtedly result in a protracted battle, including trial and possible appeal, likely costing the parties much more in time, money, and diversion

8

of resources than the possible increase in a recovery might warrant. As stated above, in asserting his defenses, Price has raised several issues of fact that would require a trial to resolve.

The expense of continuing litigation would be considerable. The completion of pretrial discovery, motions, memoranda, expert reports, necessary trial preparation, and possible appellate review would result in the expenditure of countless additional hours of effort, as well as related expenses. Motion practice and trial of the Action would result in the expenditure of significant amounts of judicial and financial resources.

### 2.    The Stage of the Proceeding

The stage of the proceedings and the amount of discovery completed is a factor which courts consider in evaluating a proposed settlement. *See, e.g., In re General Public Utilities Sec. Litig.,* [1983-84] Fed. Sec. L. Rep. (CCH) ¶99,566 (D.N.J. 1983). Even when a settlement is reached prior to formal discovery, it is nevertheless appropriate to approve the settlement if there is no evidence of collusion and the settlement represents substantial concessions by both sides. *See, e.g., In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). Settlements at an early stage are favored by the courts. *See, e.g., in re Computron Software, Inc. Sec. Litig.*, 6 F.Supp. 2d 313, 318 (D.N.J. 1998) (citing *Weiss v. Mercedes Benz of North Am., Inc.*, 889 F.Supp. 1297, 1301 (D.N.J.), *aff'd*, 66 F.3d 314 (3d Cir. 1995)).

Here, although the parties were able to reach a comparatively early resolution of the Action, following initial discovery and document production, it was not until plaintiff had obtained an understanding of the facts and circumstances concerning Price's transactions in PriceSmart securities that the Stipulation of Settlement was drafted and finalized. This

9

information gave plaintiff the opportunity to form an intelligent judgment about the likely success of the case and is, therefore, sufficient. *Accord, In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y. 1992). Although further discovery would have been necessary to prepare this case for trial, plaintiff does not believe that such further discovery would have enhanced the likelihood of a greater recovery in the context of a settlement.

### 3. The Risks of Not Establishing Liability

There are significant risks to establishing liability here. First, Price asserted that the two transactions in question did not occur within six months of one another. He asserted that he had been irrevocably bound to the April transaction a day earlier than plaintiff alleged, but was not irrevocably bound to the October transaction until a day later than plaintiff alleged. Speaking to this in its Opinion at the Rule 12 stage, the Court accepted the first portion of defendant's argument (with respect to the April date), but not the second (with respect to the October date). Hence, while the claim could move forward, the net effect – the resultant margin, so to speak – was down to just one day, October 22nd versus the 23rd. Further, although the Court held that the contract language on the October transaction did not, as a matter of law, constitute material conditions precedent to the October closing, it was still open for defendant to later establish, as a matter of fact, that the October transaction was revocable until it actually closed on October 23. That left a lot hanging on one narrow component factual issue which, like all factual issues, could end in disappointment before a trier of fact.

Defendant Price also asserted that he did not have "beneficial ownership" of the Company stock involved in these transactions such as to trigger Section 16(b) liability. The

10

determination of "beneficial ownership" status for Section 16(b) purposes is not always resolved through an easily applied, in-or-out, binary formula or rule. Despite the strict and somewhat arbitrary nature of the statute, it is understood that situations arise around the topic of beneficial ownership "that cannot be resolved by legal interpretation but which requir(e) a determination of questions of fact." *Whiting v. Dow Chemical Co.*, 523 F.2d 680, 687 (2d Cir. 1975). Further, complicating the picture, there are circumstances in which there may be a sufficient level of beneficial ownership to warrant reporting under Section 16(a) without occasioning liability for disgorgement under Section 16(b). *Whittaker v. Whittaker Corporation*, 639 F.2d 516, 526 (9th Cir., 1981), citing with approval *Whiting*, 523 F.2d at 685, n.5. As stated in *Whittaker*:

> Such liability should be imposed, however, only following a determination by the trial court not simply that the requirements of beneficial ownership were met for purposes of the Section 16(a) reporting requirement, but that actual rewards of ownership were sufficiently present to warrant attributing the stock to the insider for purposes of Section 16(b).

*Whittaker*, 639 F.2d at 528.

When answering interrogatories, defendant Price yielded on the beneficial ownership issue with respect to the latter transaction, – the purchase of stock by the Price Trust in October. However, a close and complex factual question remained, with no clear guiding precedent, with respect to the earlier of the two transactions, – the sale of stock by the Charitable Trust in April. Hence, on that score, too, plaintiff faced a significant risk, or hurdle, in the path of establishing liability.

11

## 4. **Risk In Establishing Damages**

Generally, the determination of profits to be disgorged under Section 16(b) is a fairly mechanical process, *see Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 318 (2d Cir. 1998). On that basis, plaintiff calculated the stated price differential between the two transactions and from that alleged damages of just over $2,000,000.

However, here the consideration received for the stock sale in the April transaction was mostly non-cash. As more was learned, this posed a difficult problem for plaintiff, – in fact, perhaps the most difficult hurdle of all. Over 90% of the consideration paid was in a collateralized but non-recourse five year note, and the valuation of that note unquestionably would be at some discount from its face value. That would be on account of the risk of less than full collection when the note was due, i.e., the risk that the collateral, in April, 2008, would be worth less than the note amount.

Defendant was preparing to establish, through an economics expert, that a contemporaneous valuation of the note, in April, 2003, would show that the effective value of the April transaction was just $6 per share (despite the stated sale price of $16.12 per share). The consequence of that would be that the April and October sales transactions, taken together, resulted in a loss, not a gain.

To be sure, upon first hearing, a discounting from a stated value of $16.12 per share to an actual value of $6 per share seems remarkable and subject to challenge. However, testing by plugging in PriceSmart's recent and current stock prices – two and a half years into the five year note period – tends to bear out defendant's more sophisticated, though theoretical analysis. For instance, within the past year, the Company's common stock has

12

traded at a low of $6.11 per share. From mid-March through early May of this year, it was trading below $7.58 per share, which is the price the Company's stock would have to be at maturity (April, 2008) in order for defendant to break even between the April and October transactions. And even at $8.42 per share – the past thirty day average price – the profit would be less than $280,000.

Hence, it appeared likely that defendant Price would prevail in his argument that no profit was involved, and even if that could be overcome, the damage award would come nowhere close to the initial allegations, and likely would be only be a tenth of that at most, several hundred thousand dollars at the end of the day.

### 5.    The Proposed Settlement As a Percentage of the Best Possible Recovery and the Range of Reasonableness In Light of the Litigation Risks

Again, the primary concern of a district court considering the reasonableness of a settlement is a comparison between the terms of the compromise and the likely rewards of moving ahead to complete the litigation, Here, to repeat, the claim faced a realistic risk of total loss due to the October date issue. The claim also faced a realistic risk of total loss due to the beneficial ownership issue. Then, beyond that, the claim faced a severe risk, no recovery, on the matter of damages, all for upside potential of several hundred thousand dollars.

Considered against that, the infusion of funds into PriceSmart's treasury from Price's purchase of $1.5 million worth of shares is a reasonable settlement when weighing the risks involved in successfully establishing liability and damages against the benefit right at hand. Where such risks exist, compromises reached in good faith negotiations should be upheld.

13

*See Portnoy v. XTAL Corp.*, 638 F.Supp. 489, 490 (N.D. Ill. 1986) (30% of potential

recovery held reasonable); and 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*,

§3.09 [16]. *Accord, City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) at 455, n.2

(". . . there is no reason, in theory, why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery. . .").

Under the settlement, the Company obtains $1.5 million that is much-needed, without

annual interest expense (saving $120,000 per year) and without further burdening the debt

side of its balance sheet.[3] This compares quite favorably against the considerable risks of

loss in the litigation, and measures up quite well against the best outcome to be achieved.

For these reasons, the outcome achieved by the settlement is fair and reasonable and should

be approved by the Court.

## III. THE APPLICABLE LEGAL STANDARDS SUPPORT THE AWARD OF ATTORNEYS' FEES AS REQUESTED

### A.    Plaintiff's Counsel Are Entitled To Compensation Based Upon the Substantial Benefits They Have Achieved For The Company

Under the "American Rule" each party ordinarily bears its own costs and attorney

fees. See, *e.g., Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). An exception to this general

rule is that "a litigant or a lawyer who recovers a common fund for the benefit of persons

other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a

whole." *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*,

---

[3] Further illustrative of the benefit to the Company, the Company was desirous of obtaining the cash and Mr. Price was accommodating, so the transaction went forward pursuant to the Memorandum of Understanding earlier this month, of course contingent on this Court's approval of the settlement. It went forward at the price agreed upon in the settlement, –

396 U.S. 375, 394-96 (1970); *Trustees v. Greenough*, 105 U.S. 527 (1882). "This doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F.Supp. 1201, 1203 (N.D. Ill. 1989).

In the context of Section 16 (b) claims, attorneys' fees have routinely been awarded to a security holder's counsel and have been deemed of great practical significance because the possibility of recovering attorneys' fees often provides the sole stimulus for the enforcement of Section 16(b). *See generally*, 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.10. Moreover, awarding attorneys' fees furthers the Statute's purpose by facilitating the plaintiff's ability to buy a security, hire a lawyer, sue, and have his attorneys' fees paid out of any recovery. *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469 (2d Cir. 1968); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 241 (2d Cir.), *cert. denied*, 320 U.S. 751 (1943).

## B. Fees Paid To Counsel Pursuant To Negotiated Agreements Should Be Approved By the Court

As stated above, PriceSmart, the beneficiary of the settlement recovery, has agreed to both the settlement and the attorneys' fees award. The fees were the subject of hard, protracted bargaining with the Company. Courts reviewing negotiated fees in the absence of any evidence of collusion do not generally engage in rigorous scrutiny of the fee application. Thus, in *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 47 F.R.D. 557 (E.D. Pa. 1969), the Court stated with respect to the parties who agreed to pay the fee:

---

$8.90/share, for 168,539 shares. On the day of that provisional closing, October 7, the Company's stock closed in public trading at $8.27 per share.

15

> These are responsible . . . entities and substantial enterprises for the most part represented by their own counsel; I am reluctant to suppose that they are all incorrect in their assessment of a fair and reasonable agreement.

47 F.D.R. at 559. *See also Armstrong v. Board of School Directors*, 471 F.Supp. 800, 810-11 (E.D. Wis. 1979), aff'd, 616 F.2d 305 (6th Cir. 1980); *Little Rock School District v. Pulaski County Special School Dist. No. 1*, 726 F.Supp. 1544 (E.D. Ark. 1989).

Here, the fee sought is comfortably within the range of fees awarded in this type of litigation. *See generally*, 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.10 (up to 49% of a recovery has been awarded as attorneys fees). The Court should therefore uphold the parties' agreement and approve plaintiff's application for attorneys' fees.

## IV.  NOTICE TO SHAREHOLDERS IS NOT REQUIRED

As a matter of practice, notice to shareholders of a settlement and attorney fee award is not given in connection with a Section 16(b) action. 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.09[16] (citing cases). Courts have held that Rule 23.1 of the Federal Rules of Civil Procedure, and more specifically, its notice requirement, do not apply to Section 16(b) actions. Id. This is explained by the fact that a Section 16(b) cause of action is a statutorily created right, which serves as an instrument of statutory policy for the benefit of the general public and does not serve to protect shareholders or remedy their losses, but rather, provides them with a windfall. *See*, 16 A.S. Jacobs, *Section 16 of the Securities Exchange Act*, §3.09[1].[4]

---

[4] Consistent with that interpretation of appropriate practice in Section 16(b) cases, settlements and fee awards have been approved without shareholder notice and hearing in *Levy v. Clearwater Funds IV, Ltd.*, Civil Action No. 99-004-SLR (D.Del.); *Levy v. Wingate Capital Ltd.*, Civil Action No. 99-655-GMS (D.Del.); and *Rosenberg v. Delta Airlines*, Civil Action No. 00-461-JJF (D.Del.)

Moreover, it may be noted that the terms of the settlement, along with word that attorney's fees would be applied for, were disclosed by PriceSmart in a Form 8-K which it filed with the SEC on August 22, 2005. To date, plaintiff's counsel has not received any inquiries or objections from PriceSmart shareholders.

**CONCLUSION**

For all the reasons set forth above, the settlement of the Action should be approved and the attorneys' fees and reimbursement of expenses requested by plaintiff's counsel, which have been agreed to by all parties to this litigation, should also be approved.

> ROSENTHAL, MONHAIT, GROSS
> & GODDESS, P.A.

By: _____

> Jeffrey S. Goddess (#630)
> P.O. Box 1070
> Suite 1401, 919 Market Street
> Wilmington, Delaware 19899
> (302) 656-4433
> Attorneys for Plaintiff

OF COUNSEL:
ZIMMERMAN, LEVI & KORSINSKY, L.L.P
Jean-Marc Zimmerman
226 St. Paul Street
Westfield, NJ 07090
(908) 654-8000

October 24, 2005

17

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2005, I electronically filed PLAINTIFF'S

BRIEF IN SUPPORT OF PROPOSED SETTLEMENT AND APPLICATION FOR

ATTORNEYS' FEES AND EXPENSES with the Clerk of Court using CM/ECF which

will send notification of such filing to the following:

> Lisa A. Schmidt, Esquire
> Michael R. Robinson, Esquire
> Richards Layton & Finger
> One Rodney Square
> Wilmington, DE 19801    (Also by hand delivery)
>
> Todd Charles Schiltz, Esquire
> Wolf Block Schorr and
>  Solis-Cohen LLP
> Wilmington Trust Center #1001
> 1100 N. Market Street
> Wilmington, DE 19801    (Also by hand delivery)

> JEFFREY S. GODDESS (No. 630)
> Rosenthal, Monhait, Gross
>  & Goddess, P.A.
> Suite 1401, 919 Market Street
> P. O. Box 1070
> Wilmington, DE 19899-1070
> (302) 656-4433
>  jgoddess@rmgglaw.com